UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 11-60621-CIV-MARTINEZ-MCALILEY

MARINE TURBO ENGINEERING, LTD., et al.,

    Plaintiffs,

vs.

TURBOCHARGER SERVICES
WORLDWIDE, LLC, et al.,

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT LEONARDO DA MOTTA'S AMENDED MOTION TO DISMISS COMPLAINT AND TO ABATE RESPONSE TO REMAINING CLAIMS OF COMPLAINT**

THIS CAUSE came before the Court upon Defendant Leonardo Da Motta's Amended Motion to Dismiss Complaint and to Abate Response to Remaining Claims of Complaint (D.E. No. 44). After careful consideration and for the reasons set forth below, the Court grants in part and denies in part this motion.

**I. Relevant Factual and Procedural Background**

Plaintiff Marine Turbo Engineering, Ltd. ("Marine Turbo, Ltd.") is "a repair and maintenance company that specializes in turbochargers for power plants and large ships." (D.E. No. 1-1 at 4). Marine Turbo, Ltd. and its associated companies "maintain workshops around the world that service turbochargers on-ship, at dock, at anchor, off-shore and on-land." *Id*. Plaintiff Marine Turbo Engineering, LLC ("Marine Turbo, LLC") is one of the associated companies. *Id*. It maintains workshops in Mobile, Alabama and Ft. Lauderdale, Florida. *Id*. Plaintiff Marine

Turbo Engineering (USA), LLC ("Marine Turbo (USA), LLC") was formed in 2009 "with the intention of merging the operations of Marine Turbo, LLC into this entity." *Id*. at 5. This, however, never occurred. "This entity did not employ anyone, did not hold active accounts, nor did it generate or receive income or pay any expenses." *Id*. Defendants Glyn Clemson, Karen Clemson, Kathleen Kent ("Kent"),[1] and Ivar Koek ("Koek") were all employees of Plaintiffs. *Id*. at 5-6. Defendant Leonardo Da Motta ("Da Motta") was the Director of Sales for Defendant Turbocharger Services Worldwide, LLC ("TSW"), a competing turbocharger servicing business, and Defendant Gerrit Walters ("Walters")[2] was the Technical Sales Manager of TSW and was formerly associated with Plaintiffs. *Id*. at 6. Defendant Turbo Di Corp., S.A. ("TDC") is another competing turbocharger servicing business formed at the same time as TSW in Ecuador. *Id*.

Plaintiffs allege that the individual Defendants established TSW in April 2010 "to engage in the same business and to compete with" Plaintiffs. *Id*. Plaintiffs allege that while they were Plaintiffs' employees, Defendants Glyn Clemson, Karen Clemson, Koek, and Kent actually operated TSW out of Plaintiffs' own Ft. Lauderdale workshop and that Defendants used Plaintiffs' "customer lists and customers, and . . . [misappropriated Plaintiffs'] assets and corporate opportunities to TSW." *Id*. at 6-7.

TDC was also established in April 2010 by Defendants Glyn Clemson, Koek and Walters "to engage in the same business and compete with" Plaintiffs in South America, the location of one of Plaintiffs' largest customers. *Id*. at 7. Plaintiffs allege that Kent also "participated in the

---

[1]Kent has since been dismissed from this action. *See* (D.E. No. 168).

[2]Walters has since been dismissed from this action. *See* (D.E. No. 168).

establishment and operations of TDC." *Id*. Like TSW, . . . Clemson and Koek formed and operated TDC . . . out of the Ft. Lauderdale workshop" while they were also Plaintiffs' employees. *Id*.

Plaintiffs have filed a ten-count complaint against Defendants alleging, breach of employment agreement,[3] violation of Florida's Uniform Trade Secrets Act, violation of Computer Fraud and Abuse Act, Civil Conspiracy, tortious interference with advantageous business relationships, conversion and misappropriation of corporate assets and opportunities, breach of fiduciary duty,[4] and breach of common law duty of loyalty.[5] In Count IX, Plaintiffs seek an injunction, and in Count X, Plaintiffs seek a declaratory judgment against Glyn Clemson declaring his interest in Marine Turbo (USA), LLC. Defendant Da Motta now moves to dismiss the claims asserted against him pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Legal Standard

When considering a motion to dismiss pursuant to Rule 12(b)(6), all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.' " *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir. 1997)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair

---

[3] This count, Count I, is only asserted against Defendant Glyn Clemson.

[4] This count, Count VII, is only asserted against Defendants Glyn Clemson, Karen Clemson, Kent, and Koek.

[5] This count, Count VIII, is only asserted against Defendants Glyn Clemson, Karen Clemson, Kent and Koek.

notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, a plaintiff is not required to make detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Factual allegations must be enough to raise a right to relief above the speculative level . . .on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. Dismissal is also appropriate where "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993).

**III. Analysis**

Defendant Da Motta moves to dismiss Count II, which asserts a violation of Florida's Uniform Trade Secrets Act, Count III, which asserts a violation of the computer fraud and abuse act, Count IV, which asserts a claim for civil conspiracy, Count V, which asserts a claim for tortious interference with advantageous business relationship, Count VI, which asserts a claim for conversion and misappropriation of corporate asserts and opportunities, and Count IX which is a claim entitled "Injunction-Restrictive Covenants."[6] Da Motta, however appears to focus on

---

[6]Da Motta confusingly says that all these claims should be dismissed based on the arguments he outlines but then appears to argue that some of the claims, Counts II, III, IV, and V, are not implicated by his arguments, and thus, he asks to abate the requirement that he file a response to these claims pending a ruling on this motion and pending a ruling on the motion for preliminary injunction. The Court rejects this argument and as discussed below, Defendant Da

Counts VI and IX.

Da Motta argues that Plaintiffs have failed to state a claim against him in these counts because these counts are predicated on the enforcement of an employment contract between Plaintiff Marine Turbo, Ltd. and Defendant Glyn Clemson, which Plaintiffs "seek to impute . . . upon Da Motta as well as the other Defendants." (D.E. No. 44 at 3). Da Motta raises a number of arguments relating to this agreement. The Court finds all of these arguments are without merit, with the exception of Da Motta's argument relating to part of Count VI.

First, Da Motta argues that Plaintiffs' allegations are deficient because Plaintiffs fail to allege that the employment contract attached to the complaint is a true and correct copy of the agreement. Da Motta then argues that the signature page to this agreement is missing and argues that there may be a different agreement other than the agreement that was attached to the complaint. Da Motta specifically examines the font and formatting of the agreement. The Court finds these arguments are without merit in a motion to dismiss.

There is no requirement that Plaintiffs allege that the agreement attached to the complaint is a true and correct copy or that they even attach a copy of the agreement to the complaint. Next, the Court disagrees that it can determine from the face of the complaint that the agreement at issue is fraudulent or not the real agreement. Accordingly, the Court denies the motion to dismiss on the basis of this argument.

In addition, Da Motta argues that the contract on its face is unenforceable because it is missing certain key terms. The Court finds these arguments are without merit but discusses each argument relating to the terms.

---

Motta is required to file an Answer to the Complaint in accordance with the deadline set below.

First, Da Motta argues that "the 'Restricted Period' section, for purposes of the non-compete provision, lacks specific detail of which time periods apply to particular clauses of the contract." (D.E. No. 44 at 8). This claim appears to specifically relate to Count IX, which Plaintiffs have entitled "Injunction-Restrictive Covenants," (D.E. No. 1-1 at 21) as none of the other counts asserted against Da Motta cite sections of the employment agreement. The term "Restricted Period" is defined in the employment agreement attached to the complaint, and this term is used in two specific sections, sections 20.1:1 and 20.1:5,[7] of the agreement that Plaintiffs allege Defendants violated in Count IX. (D.E. No. 1-1 at 21-23).

Sections 20.1:1 and 20.1:5 appear in a section entitled "Restrictions After Termination" and state as follows:

> 20.1:1 The *Employee* shall not for the Restricted Period directly or indirectly solicit or transact business in the Field of Business in competition with the *Company* from or with any of the *Company's* customers, clients, agents, suppliers or advisers.
>
> 20.1:5 The *Employee* shall not for the Restricted Period directly or indirectly work for any person who as a result of engaging the *Employee* or his services in any capacity becomes a competitor of the *Company*.

(D.E. No. 1-1 at 37-38) (emphasis in original). The term "Restricted Period" is defined in an earlier definitions section as follows:

> 'Restricted Period'
>
> means [the duration of this (document) and] the period starting [on the date of this (document) (or) the Effective Date (or) the Completion Date (or) the end of the Employee's employment] and lasting:

---

[7]Plaintiffs also allege violations of a number of other sections of the agreement in Count XI, which do not contain the term "Restricted Period." These sections relate to provisions under headings such as "Good Faith" and "Confidential Information" and would not be implicated by Da Motta's arguments related to the "Restricted Period."

> — [one] year in respect of clauses (number), (number) and (number)
> — [six months] in respect of clause (number); and
> — [eighteen months] in respect of clause (number).

(D.E. No. 1-1 at 29).

Given the location of the section 20.1 provisions in the "Restrictions After Termination" section, the relevant date with respect to Plaintiffs' allegations is the termination of Glyn Clemson's employment, which appears to have occurred on December 7, 2010. (D.E. No. 1-1 at ¶¶ 12, 35). The Court agrees that it is unclear from the face of the contract if the "Restricted Period" was six months, one year, or eighteen months. It is, however, sufficiently alleged that there was a restriction on competing or working for a competitor for some length of time and that Clemson breached this provision.

Any ambiguity as to the time limit is an issue the Court can resolve. *See Corporate Management Advisors, Inc. v. Boghos*, 756 So. 2d 246, 247 (Fla. 5th DCA 2000) (stating "that even if we accept the trial court's conclusion that the geographic and time restrictions of . . . [the [plaintiff's] contract with Boghos were too broad, that does not automatically invalidate the contract and render it totally unenforceable."); *Health Care Financial Enterprises, Inc. v. Levy*, 715 So. 2d 341, 342 (Fla. 4th DCA 1998) (discussing "why an otherwise reasonable restrictive covenant should not be held invalid because it is unreasonable solely as to time, place or both."); *see also* Fla. Stat. § 542.335(h) (stating that "a court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement. A court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract."). It does not mean Plaintiffs have failed to state a claim.

It is also alleged that the other Defendants including Da Motta "assisted, directed, aided and participated with Clemson" in violating his restrictive covenants. (D.E. No. 1-1 at 22). *See also* Fed. R. Civ. P. 65(d)(2) (stating that an injunction may bind a person in active concert or participation with a party or a party's officers, or agents).

Da Motta also argues that

> although the purported agreement states that it applies to 'Associated Companies' of . . . [Marine Turbo, Ltd.], the purported agreement does not specify whether the terms and conditions contained therein apply to Associated Companies acquired after the date of execution. Plaintiff alleges that . . . [Marine Turbo, LLC] is an Associated Company of . . . [Marine Turbo, Ltd.], established in 2007 . . . . Thus, it is unclear whether the restrictions contained in the purported agreement apply to Defendants' actions alleged actions [sic] in regard to . . . [Marine Turbo, LLC.]

(D.E. No. 44 at 8-9). Plaintiffs, however, have affirmatively alleged that Marine Turbo LLC is "an Associated Company" of Marine Turbo Ltd. (D.E. No. 1-1 at 4). The employment agreement states that wherever the agreement states Company, it includes both the Company and Associated Company. (D.E. No. 1-1 at 28). Moreover, the employment agreement defines Associated Companies broadly, including that they are any company designated as such by Marine Turbo Ltd. *Id*. Accordingly, this argument also does not warrant dismissal.

In addition, Da Motta argues that "[t]he geographic scope of the purported employment restrictions is also ambiguous." *Id*. at 9. Da Motta specifically references provision 20.1:7, which states:

> The *Employee* shall not for the Restricted Period directly or indirectly work or engage or be interested in the United Kingdom with a radius of (50) miles from any of the *Company's* premises in any business in the Field of Business and which competes with the *Company*.

(D.E. No. 1-1 at 38). Da Motta argues that "Plaintiffs do not allege, nor do they attach any

written document that indicates that Clemson agreed that the restriction of Clause 20.1:7 extended beyond the United Kingdom, and into the Western Hemisphere as Plaintiffs assert." (D.E. No. 44 at 9). However, Plaintiffs never state that this provision of the contract, 20.1:7, is the subject of their claims. Plaintiffs cite other specific provisions, but not this one. Thus, the Court finds Da Motta's argument is without merit.

Da Motta also argues that Count VI fails to state a claim because Plaintiffs have not alleged that Da Motta was ever an employee of Plaintiffs, and thus, Plaintiffs have not alleged that Da Motta was subject to the restrictive covenants. Da Motta also alleges that "Da Motta has never been nor is alleged to have been, an officer, director, or interest holder of Plaintiffs or its associated companies. Thus, Da Motta had no obligation to Plaintiffs with respect to alleged 'corporate opportunities.'" *Id*. at 10.

Count VI is a claim for conversion and misappropriation of corporate assets and opportunities. "[T]o state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Edwards v. Landsman*, 51 So. 3d 1208 (Fla. 4th DCA 2011). Here, Plaintiffs have sufficiently alleged that they owned certain funds, facilities, confidential information, and equipment and that Defendants, including Defendant Da Motta, wrongfully asserted dominion over these assets. There is no requirement that Da Motta be an employee or an officer, director, or interest holder of Plaintiffs or its associated companies for him to be liable for civil conversion. There is also no requirement that Da Motta be subject to the restrictive covenant under the employment agreement for Plaintiffs to state a civil conversion claim against him.

Plaintiffs' claim that Da Motta misappropriated corporate assets and corporate opportunities is more difficult.  These claims presuppose a duty to the corporation, which Da Motta is not alleged to have.  "If one occupying a fiduciary relationship to a corporation acquires, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to is existence, he violates what has come to be known as the doctrine of corporate opportunity." *Farber v. Servan Land Co., Inc*., 662 F. 2d 371 (5th Cir. Unit B 1981) (applying Florida law)  (internal quotations omitted).  There are no allegations that Da Motta had a fiduciary relationship with Plaintiff.  Accordingly, the Court dismisses this part of Count VI.  Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that

Defendant Leonardo Da Motta's Amended Motion to Dismiss Complaint and to Abate Response to Remaining Claims of Complaint (D.E. No. 44) is **GRANTED in part and DENIED in part**.  The motion is granted in that the part of Count VI asserted against Defendant Da Motta for misappropriation of corporate assets and corporate opportunities is dismissed.  The motion is denied in all other respects.  Defendant Da Motta shall file an Answer to the Complaint on or before January 6, 2012.

DONE AND ORDERED in Chambers at Miami, Florida, this 22 day of December, 2011.

```
                                          _____
                                          JOSE E. MARTINEZ
                                          UNITED STATES DISTRICT JUDGE
```

Copies provided to:
Magistrate Judge McAliley
All Counsel of Record
All pro se parties