UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number: 11-60621-CIV-MARTINEZ-MCALILEY

MARINE TURBO ENGINEERING, LTD., et
al.,

      Plaintiffs,

vs.

TURBOCHARGER SERVICES
WORLDWIDE, LLC, et al.,

      Defendants.

_____/

## AMENDED[1] ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PRELIMINARY INJUNCTION

THIS CAUSE came before the Court upon Plaintiffs' Verified Emergency Motion for

Preliminary Injunction (D.E. No. 4). The Court held a hearing on this motion on April 5, 2011.

*See* (D.E. No. 40). After careful consideration and for the reasons set forth below, the Court

grants in part and denies in part Plaintiffs' motion for a preliminary injunction.

### I. Relevant Factual and Procedural Background

Plaintiff Marine Turbo Engineering, Ltd. ("Marine Turbo, Ltd.") is located in Birkenhead,

England and is "a repair and maintenance company that specializes in turbochargers for power

plants and large ships." (D.E. No. 1-1, Compl. at ¶ 17);[2] *see also* (D.E. No. 39, Aff. of Stanley

---

[1]This Order is amended only to correct the portions of the order that extended certain
parts of the injunction until June 7, 2011 to correct the injunction to read June 7, 2012. The
Court has also extended the deadline for Plaintiffs to post their bond.

[2]Although the complaint is certainly not evidence, the Court cites to the allegations in the
complaint for general background facts that no one is disputing.

Dean at ¶ 3). Marine Turbo, Ltd. and its Associated Companies[3] "maintain workshops around the world that service turbochargers on-ship, at dock, at anchor, off-shore and on-land." (D.E. No. 1-1, Compl. at ¶ 17). Plaintiff Marine Turbo Engineering, LLC ("Marine Turbo, LLC") is one of Marine Turbo, Ltd.'s Associated Companies. (D.E. No. 39, Aff. of Stanley Dean at ¶ 11). Plaintiff Marine Turbo, LLC owns Plaintiff Marine Turbo Engineering (USA), LLC ("Marine Turbo (USA), LLC"). *Id.* at ¶ 6. Marine Turbo (USA), LLC never became operational and "did not hold active accounts, nor did it generate or receive income or pay any expenses." (D.E. No. 1-1, Compl. at ¶ 19). Marine Turbo, Ltd. "pays expenses for and provides common business services" to Marine Turbo, LLC. (D.E. No. 39, Aff. of Stanley Dean at ¶ 5). Marine Turbo, LLC maintained a worshop at 3708 SW 30th Ave., Ft. Lauderdale, Florida 33312. *Id.* at ¶ 4.

Defendants Glyn Clemson, Karen Clemson, Kathleen Kent ("Kent"), Gerrit Walters ("Walters"), and Ivar Koek ("Koek") were all employees of Plaintiffs. (D.E. No. 39, Aff. of Stanley Dean at ¶¶ 7- 21). Defendant Glyn Clemson became an employee of Marine Turbo, Ltd. in 2003. *Id.* at ¶ 7. In 2005, Marine Turbo, Ltd. relocated Glyn Clemson to a position in the Bahamas. *Id.* at ¶ 8. On June 27, 2005, Glyn Clemson executed an employment agreement with Marine Turbo, Ltd. and its Associated Companies. (D.E. No. 1-1, Exh. A at 28, 41, 45). This agreement contains certain restrictions on competition and disclosure of confidential information. *Id.* at 28-45. In 2008, Glyn Clemson was once again relocated to Ft. Lauderdale to manage Marine Turbo, LLC's North and South American operations as well as their Bahamian

---

[3]The relevant employment agreement defines Associated Companies as "companies which are directly or indirectly subsidiary [sic] and holding companies of . . . [Marine Turbo, Ltd.] and other subsidiaries of any holding company of . . . [Marine Turbo, Ltd.] and any other company which is designated by . . . [Marine Turbo, Ltd.] to be an Associated Company." (D.E. No. 1-1, Exh. A at 28).

operations. *Id.* at 10.

Karen Clemson was also an employee of Marine Turbo, LLC. (D.E. No. 153-2, Sworn Statement of Kent at 11-12); (D.E. No. 4-1, Exh. B at 25). Karen Clemson was hired by her husband, Glyn Clemson, to do the Bahamas bookkeeping. *Id.* at 11.

Kent was also an employee of Marine Turbo, LLC who was hired to perform bookeeping and account coordination in the Ft. Lauderdale workshop. *Id.* at 10-11. Kent has since been dismissed from this action, and Plaintiffs have filed her detailed sworn statement regarding the actions of her former co-defendants. (D.E. Nos. 153-2,168).

Walters was also an employee of Plaintiffs. (D.E. No. 4-1, Exh. C); (D.E. No. 39, Aff. of Stanley Dean at ¶ 21). He was hired on a trial basis to see if he could generate work for Marine Turbo, LLC. *Id.* Walters has since been dismissed from this action, and Plaintiffs have filed a sworn statement regarding the actions of his former co-defendants. (D.E. Nos. 131-1,168).

Finally, Koek was employed by Marine Turbo, LLC since 2008 when it was headquartered in Mobile, Alabama. *Id.* at 15. Koek was employed to take work orders and to provide service and repair work. (D.E. No. 4-1, Exh. B at 26, 28).

Defendant Leonardo Da Motta ("Da Motta") sought employment with Marine Turbo, LLC and Marine Turbo, Ltd. to act as a salesman. (D.E. No. 39, Aff. of Stanley Dean at ¶¶ 22, 23). Da Motta interviewed with Glyn Clemson, and Glyn Clemson reported back to the owners of Marine Turbo, Ltd. and Marine Turb, LLC that Da Motta demanded too high a salary, and thus, Da Motta was not hired by Plaintiffs. *Id.* at ¶ 24. Da Motta, however, was hired by Glyn Clemson as the Director of Sales for Defendant Turbocharger Services Worldwide, LLC ("TSW"), a competing turbocharger servicing business. (D.E. No. 4-1, Exh. G at 60). Da Motta

worked out of Plaintiffs' Ft. Lauderdale office. *Id.*; (D.E. No. 153-2, Sworn Statement of Kent at 62).

TSW was formed by Glyn Clemson and Kent on April 15, 2010. (D.E. No. 4-1, Exh. D at 39). The principal address of TSW was listed as the same as Plaintiffs' Ft. Lauderdale workshop. *Id.* TSW engaged in the same business as Plaintiffs; namely, repairing and servicing marine turbochargers. *Id.*, Exh. F at 54-55, 58-78. TSW operated out of the Plaintiffs' Ft. Lauderdale workshop using Plaintiffs' equipment, including their computers, and Plaintiffs' facilities. *Id.*, Exh. G at 58; (D.E. No. 39-7 at 1-6); (D.E. No. 153-2, Sworn Statement of Kent at 34-35, 42, 62-63, 116, 127-128). Defendants' employees, Glyn Clemson, Kent, Walters, and Koek and Da Motta, an employee of TSW, actively worked for TSW and actively engaged in direct competition with Plaintiffs in North and South America and the Caribbean Basin, at times providing identical services to identical customers formerly serviced by Plaintiffs. (D.E. No. 4-1, Exh. F at 54; Exh. G at 58-59, 61, Exh. J, Exh. K at 90-96); (D.E. No. 153-2, Sworn Statement of Kent at 71-72).

Around the same time that TSW was established, Koek, Clemson, and Walters established Defendant Turbo Di Corp., S.A. ("TDC"), another competing turbocharger servicing business in Ecuador. (D.E. No. 201-2 at 1-4); (D.E. No. 4-1, Exh. F at 56). Work for TDC was also performed out of Plaintiffs' Ft. Lauderdale workshop, and the address of the workshop was also used in association with TDC. (D.E. No. 39, Aff. of Stanley Dean at ¶¶ 30-34); (D.E. No. 43-1 at 1-3). Defendants' employees, Glyn Clemson, Kent, Walters, and Koek actively worked for TDC, and TDC actively engaged in direct competition with Plaintiffs in Ecuador, at times providing identical services to identical customers formerly serviced by Plaintiffs. (D.E. No. 43-

-4-

2, 7-8); (D.E. No. 39-6 at 1-2); (D.E. No. 39-7 at 3-6); (D.E. No. 39-8 at 1-20).

On December 7, 2010, Stanley Dean, the owner of Marine Turbo, Ltd. made a surprise visit to the Ft. Lauderdale workshop and immediately terminated Glyn Clemson and Kent. (D.E. No. 39, Aff. of Stanley Dean at ¶¶ 3, 26, & 27).

Plaintiffs have filed a ten-count complaint against Defendants alleging, breach of employment agreement,[4] violation of Florida's Uniform Trade Secrets Act, violation of the Computer Fraud and Abuse Act, civil conspiracy, tortious interference with advantageous business relationships, conversion and misappropriation of corporate assets and opportunities, breach of fiduciary duty,[5] and breach of common law duty of loyalty.[6] In Count IX, Plaintiffs seek an injunction, and in Count X, Plaintiffs seek a declaratory judgment against Glyn Clemson declaring his interest in Marine Turbo (USA), LLC.

Plaintiffs filed a motion for a preliminary injunction asking the Court to enter an order enjoining all Defendants from:

> (1) competing either directly or indirectly with Plaintiffs in their geographic territory of operations; (2) possessing or seeking to possess any of Marine Turbo's assets or corporate materials; (3) misrepresenting themselves as being employed by, working for or on behalf of, or being associated in any manner with, Marine Turbo, Ltd. or any of its Associated Companies . . .; (4) contacting any of Plaintiffs' customers or prospective customers; (5) using any confidential information or trade secrets obtained through Defendants' former employment to their advantage vis-à-vis Marine Turbo; and (6) assisting, being employed by, engaging in, or taking a greater than 1% interest in any company . . . that competes

---

[4]Count I is only asserted against Defendant Glyn Clemson.

[5]Count VII is only asserted against Defendants Glyn Clemson, Karen Clemson, Kent, and Koek.

[6]Count VIII is only asserted against Defendants Glyn Clemson, Karen Clemson, Kent and Koek.

with Marine Turbo.

(D.E. No. 4 at 20).  The Court grants in part and denies in part Plaintiffs' motion.

## II. Legal Standard

"A preliminary injunction is an 'extraordinary and drastic remedy.'" *Citizens for Police Accountability Political Committee v. Browning*, 572 F. 3d 1213, 1217 (11th Cir. 2009) (quoting *McDonald's Corp. v. Robertson*, 147 F. 3d 1301, 1306 (11th Cir. 1998)).  "To secure an injunction, a party must prove four elements: (1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) the injury outweighs whatever damage an injunction may cause the opposing party; and (4) an injunction is not adverse to the public interest." *Browning*, 572 F. 3d at 1217.

## III. Analysis

Plaintiffs seek an injunction on the basis of their claims in Count I, breach of the employment agreement, Count II, violation of Florida's Uniform Trade Secrets Act, Count III, violation of the Computer Fraud and Abuse Act, and Count V, tortious interference with business relationship.[7] *See* (D.E. No. 4 at 9, 15-16).

### A.    Substantial Likelihood of Success on the Merits

#### 1.    Breach of the Employment Agreement

---

[7]Plaintiffs also base their request for an injunction on a violation of section 608.4225 of the Florida Statutes, arguing that Glyn Clemson violated his statutory duties of loyalty and care to Plaintiff Marine Turbo, LLC.  This claim does not appear in Plaintiffs' complaint.  Accordingly, the Court has not considered it.

In addition, Plaintiffs also appear to base their request for a preliminary injunction on Count VII, breach of common law fiduciary duty, and Count VIII, breach of common law duty of loyalty.  Plaintiffs, however, abandon these arguments in their post-hearing brief and proposed order.  Accordingly, the Court declines to address these arguments.

First, Plaintiffs seek a preliminary injunction on the basis of their claim against Defendant Glyn Clemson for breach of the employment agreement. Plaintiffs allege that Glyn Clemson has breached an employment agreement he signed with Plaintiff Marine Turbo, Ltd. in 2005. (D.E. No. 1-1 at 11). Plaintiffs alleged that Clemson violated "paragraphs 3.1, 3.2, 3.4, 3.6, 17.1, 17.2, 17.4, 17.5, 17.7, 19.1, and 19.2 of his agreement by defalcating and otherwise misappropriating MARINE TURBO's property, customers, trade secrets, business methods, benefits, corporate opportunities and other assets and establishing TSW, LLC. And TDC, S.A. (D.E. No. 1-1 at 12). Plaintiffs' request for an injunction relate to Glyn Clemson's breach of restrictive covenants in sections 17, 19, and 20 of the employment agreement. The Court finds that Plaintiffs have demonstrated a substantial likelihood of success as to this claim.

The relevant provisions of the employment agreement that Plaintiffs allege Clemson violated in Count I are as follows[8]:

GOOD FAITH

17.1 The *Employee* may not directly or indirectly carry on or assist in carrying on or be employed or engaged in any other business or work of any kind except by investments up to £[10,000] each of a passive nature which, other than for monitoring by the receipt and perusal of accounts and reports, require no time or effort on the part of the *Employee*.

17.2 The *Employee* shall not directly or indirectly carry on or assist in carrying on or be employed or engaged in or be interested in any way in any business which competes with that of the *Company* except as the owner of shares or securities in any company dealt with on any recognised stock exchange entitling the holder to exercise not over [1]% of the total votes exercisable at general meetings of its member.

17.4 If the *Employee* is in breach of any of the terms of his or her employment he or she shall immediately disclose the breach to the *Company* and if he or she

---

[8]The Court has also included the headings for each group of provisions.

becomes aware of any breach of the terms of employment of any other employee he or she shall disclose the breach to the *Company* as soon as he or she becomes aware of it.

17.5 The *Employee* shall not use or otherwise turn to his or her advantage his or her knowledge of or any connection with any of the customers of or suppliers to the *Company* so as to take any direct or indirect advantage of the business and other connections of the *Company* except for its advantage.

17.7 The *Employee* shall communicate with the Directors of the company on a weekly basis giving honest and accurate information in written reports via fax or electronic means, regarding financial information cash-flows and spending patterns, service and repair work, sales and marketing revenues and actions.

CONFIDENTIAL INFORMATION

19.1 Except as authorised or required by his or her duties the *Employee* shall keep secret and shall not use or disclose and shall use his or her best endeavours to prevent the use or disclosure by or to any person of any of the *Company's* Confidential Information which comes to his or her knowledge during his or her employment.

19.2 The restriction in sub-clause 19.1 shall apply during and after the termination of the *Employee's* employment without any time limit but shall cease to apply to information or knowledge which the *Employee* establishes has in its entirety become public knowledge otherwise than through any unauthorized disclosure or other breach on his or her part of that restriction.

(D.E. No. 1-1, Exh. A at 30-31, 36-37) (emphasis in original).

Plaintiffs claim for "Injunction-Restrictive Covenants" in Count IX also adds that

Clemson breaches covenants not to compete in provisions 20.1:1 and 20.1:5 in the section of the

employment agreement labeled "RESTRICTIONS AFTER TERMINATION." These provisions

provide:

20.1:1 The *Employee* shall not for the Restricted Period directly or indirectly solicit or transact business in the Field of Business in competition with the *Company* from or with any of the *Company's* customers, clients, agents, suppliers or advisers.

-8-

> 20.1:5 The *Employee* shall not for the Restricted Period directly or indirectly work for any person who as a result of engaging the *Employee* or his services in any capacity becomes a competitor of the *Company*.

*Id.* at 27-28.

"The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." Fla. Stat. § 542.335(b). "A person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction." Fla. Stat. § 542.335(c). If a person meets this burden and establishes a prima facie case that the restraint is necessary, "the person opposing enforcement has the burden of establishing that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests." *Id.* If a restraint is overbroad, overlong or otherwise not reasonably necessary, "a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests." *Id.*

The Court finds Plaintiffs have shown a substantial likelihood of demonstrating their prima facie case. A legitimate business interest "includes, but is not limited to:"

> 1. Trade secrets, as defined in s. 688.002(4).
> 2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets.
> 3. Substantial relationships with specific prospective or existing customers, patients, or clients.
> 4. Customer, patient, or client goodwill associated with:
>    a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress";
>    b. A specific geographic location; or
>    c. A specific marketing or trade area.
> 5. Extraordinary or specialized training.

Fla. Stat. § 542.335(b). Here, Plaintiffs argue that the restrictions protect "valuable confidential business or professional information," "substantial relationships with specific prospective or existing customers," and "extraordinary or specialized training." *See* (D.E. No. 4 at 13). The Court agrees that Plaintiffs have demonstrated that Defendants had access to specific client information, including their purchasing patterns and expected needs and that they used this information to solicit clients for TSW and TDC. (D.E. No. 4, Exhs. G, K, M and N); (D.E. No. 131-1, Sworn Statement of Walters at 7-13, 28-29, 31-33); (D.E. No. 153-2, Sworn Statement of Kent at 27-30, 37-39, 60-61, 66-67, 100-101, 140-141, 146-147, 154). The Court finds it unnecessary to address Plaintiffs' apparent argument that the restrictions also protected extraordinary or specialized training.[9] Accordingly, there is a substantial likelihood that these restraints at the very least would be found to protect valuable business information and substantial relationships with existing clients.

Defendants Glyn Clemson, Da Motta, and Karen Clemson have responded with a number of arguments relating to the employment agreement and the general applicability of this action to him or her, and the Court addresses each Defendant's arguments in turn. First, Glyn Clemson argues that the employment agreement was never signed by both parties and states that only he signed the document. Glyn Clemson references the copy of the employment agreement attached to the complaint, which the Court agrees shows only Glyn Clemson's signature. However, section 542.335 states only that "[a] court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought." Fla. Stat. §

_____

[9]Plaintiffs have not pointed this Court to any specific evidence that demonstrates there was such extraordinary or specialized training.

-10-

542.334(1)(a). Here, it is undisputed that the employment agreement is signed by Glyn Clemson. Accordingly, this argument is without merit.

Next, Glyn Clemson argues that the term "Restricted Period" in the employment agreement remains undefined as there is a choice of 6 months, 12 months, or 18 months.[10] In the employment agreement, the restrictions in section 20 are labeled as restrictions after termination and state that they apply for the "Restricted Period," which as defined in the contract is anywhere from 6 months to 18 months. (D.E. No. 1-1 at 29). The term "Restricted Period" used in the cited provisions of section 20 is defined in an earlier definition section of the employment agreement as follows:

> 'Restricted Period'
>
> means [the duration of this (document) and] the period starting [on the date of this (document) (or) the Effective Date (or) the Completion Date (or) the end of the Employee's employment] and lasting:
> — [one] year in respect of clauses (number), (number) and (number)
> — [six months] in respect of clause (number); and
> — [eighteen months] in respect of clause (number).

(D.E. No. 1-1 at 29). The Court agrees that it is unclear from the face of the contract if the "Restricted Period" was six months, one year, or eighteen months.

The Court finds, however, whatever the time period is, the range of six months to eighteen months is substantially likely to be found reasonable. *See New Horizons Computer Learning Centers, Inc. v. Silicon Valley Training Partners, Inc.*, No. 2:02CV459FTM29SPC, 2003 WL 23654790, at *6 (M.D. Fla. Nov. 12, 2003) (stating that "[i]n the case of a restrictive covenant sought against a former employee or agent, any time restraint less than six (6) months is

---

[10]The Court also addresses this argument in its order denying Da Motta's motion to dismiss.

-11-

presumed to be reasonable and any time restraint exceeding two (2) years is presumed to be unreasonable" and finding that the time frame of one year was reasonable under the Florida Statutes."). Moreover, the Court can determine a reasonable time limit with regard to these restrictions. *See Corporate Management Advisors, Inc. v. Boghos*, 756 So. 2d 246, 247 (Fla. 5th DCA 2000) (stating "that even if we accept the trial court's conclusion that the geographic and time restrictions of its contract with Boghos were too broad, that does not automatically invalidate the contract and render it totally unenforceable."); *Health Care Financial Enterprises, Inc. v. Levy,* 715 So. 2d 341, 342 (Fla. 4th DCA 1998) (discussing "why an otherwise reasonable restrictive covenant should not be held invalid because it is unreasonable solely as to time, place or both."); *see also* Fla. Stat. § 542.335(h) (stating that "a court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement. A court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract."). Accordingly, the Court also finds this argument is without merit.

Glyn Clemson also argues that pursuant to section 20.2:4 the restrictions in the employment agreement are no longer operative. Section 20.2:4 provides that "[t]he restriction in clause 20 shall cease to apply to any business which the *Employee* can show has been discontinued by the *Company*." (D.E. No. 1-1 at 38) (emphasis in original). Glyn Clemson argues that pursuant to Plaintiffs' allegations in the complaint, Plaintiffs have discontinued all of its "business" in North America so the restrictions no longer apply here. The Court disagrees.

First, the Court questions Glyn Clemson's interpretation of the term business as a

geographic term. The term business means "an occupation, profession, or trade." Dictionary.com, htto://dictionary.reference.com/browse/business.  Giving the term its plain meaning, as this Court must do in interpreting any contract, this section means that if the Company stops repairing or maintaining turbochargers than the employee would be free to engage in that business.  Moreover, Plaintiffs allege more than that they just discontinued their business.  Instead, Plaintiffs alleged and introduced evidence that they were forced to discontinue their business in North America because of Defendants' actions.  Thus, this argument is also without merit.  *See also* Fla. Stat. § 542.335(g)(2) (stating that a court "[m]ay consider as a defense the fact that the person seeking enforcement no longer continues in business in the area or line of business that is the subject of the action to enforce the restrictive covenent *only if* such discontinuance of business is not the result of a violation of the restriction.") (emphasis added).

Finally, Glyn Clemson argues that the employment agreement is void because he entered into another agreement with Marine Turbo LLC, which provided that he could compete with Plaintiffs.  Glyn Clemson cites to section 3.4 of this agreement, which provides:

> 3.4 Other Business Ventures.  Unless the terms of an employment agreement between a Member or Manager and the Company provide otherwise, any Member or Manager may engage in or possess an interest in other business ventures of every or any nature and description, independently or with others, whether or not similar to or in competition with the business or the Company, and neither the Company nor the Members shall have any right by virtue of this Agreement in or to such other business ventures or to the income or profits derived therefrom.

(D.E. No. 140. at 12).  Glyn Clemson's argument is belied by the first sentence of this provision which states that "[u]nless the terms of an employment agreement between a Member or Manager and the Company provide otherwise."  Here, an employment agreement between Glyn Clemson and the Company does provide otherwise.  This argument is without merit.

-13-

Da Motta makes a number of the same arguments made in his motion to dismiss, which this Court has addressed in a separate order. The Court briefly reiterates Da Motta's arguments and its findings. First, Da Motta argues that after examining the formatting and alignment discrepancies that the employment agreement may not be the agreement executed by the parties and appears to suggest the agreement may be fraudulent. The Court finds Da Motta's arguments are speculative at best and cannot say from the face of the employment agreement or any other evidence in the record that it is fraudulent or in any way invalid.

Da Motta also makes the same argument relating to the "Restricted Period" that Glyn Clemson has made. The Court does not repeat its discussion from above but finds this argument is without merit.

Next, Da Motta argues that it is unclear from the agreement whether the restrictions should apply to any Associated Company acquired by Marine Turbo Ltd. after the date of the execution of the employment agreement. Plaintiffs, however, have offered evidence that Marine Turbo LLC is an Associated Company. (D.E. No. 39, Aff. of Stanley Dean at ¶¶ 10, 11). The employment agreement states that wherever the agreement states Company, it includes both the Company and Associated Company. (D.E. No. 1-1, Exh. A at 28). Moreover, the employment agreement defines Associated Companies broadly, including that they are any company designated as such by Marine Turbo Ltd. *Id.* Thus, this argument also lacks merit.

Da Motta also argues that the geographic scope of the restriction sought to be imposed by Plaintiffs is ambiguous as to is application beyond the United Kingdom. However, as discussed in the order on Da Motta's motion to dismiss, the specific provision invoking the United Kingdom, section 20.1:7 is not referenced in the Complaint. The Court does agree that the

geographic scope of the agreement is unspecified; however, as discussed above relating to the ambiguity regarding the length of the restrictions, this Court may determine a reasonable geographic scope of the restrictions. *See Boghos*, 756 So. 2d at 247; *Levy*, 715 So. 2d at 342.

Da Motta also argues that Clemson's employment with Marine Turbo Ltd. terminated in 2008 and that he was employed from that point forward by Marine Turbo LLC, which was not a party to the employment agreement. First, to the extent Da Motta makes this argument in reliance on stricken documents, the Court finds these arguments are without merit. See (D.E. No. 194) (striking certain documents). Second, Plaintiffs have offered evidence that Marine Turbo LLC was an Associated Company of Marine Turbo Ltd. and thus, clearly a party to the restrictions in Glyn Clemson's employment agreement. *See* (D.E. No. 39 at ¶¶ 9, 10, 11, 13); (D.E. No. 1-1, Exh. A at 28, 41).

Finally, Karen Clemson has filed a response to the motion for preliminary injunction, stating simply that she "never participated in any of the actions stated in the Complaint for TSW, LLC or TDC, S.A. A business card was made for me by Kent but sat on my desk and was never used or passed out to anyone." (D.E. No. 198 at 2).[11] In the record is a business card for TSW LLC that states Karen Clemson is an Account Coordinator. (D.E. No. 4-1, Exh. J). Plaintiffs, however, have not pointed the Court to any evidence that Karen Clemson was specifically involved in any of the alleged misdeeds. Former Defendant Kathleen Kent states only that Karen Clemson came into the office and worked on Plaintiffs' accounts in the Bahamas. (D.E. No. 153-2, Sworn Statement of Kent at 11-12). Accordingly, the Court cannot find there is a substantial

---

[11]Karen Clemson's arguments do not really go to the employment agreement but more to the enforcement of the injunction against her as a whole, but the Court finds it appropriate to address her arguments here.

likelihood of success with regard to the claims asserted against Karen Clemson. There is, however, as discussed a substantial likelihood of success on Plaintiffs' claim relating to the restrictive covenants.

## 2. Violation of Florida's Uniform Trade Secrets Act

The Court also finds a substantial likelihood of success as to Plaintiffs' claims for a violation of Florida's Uniform Trade Secrets Act. In order to prove a violation of Florida's Uniform Trade Secrets Act, Plaintiffs must prove that: "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001). In addition, "[t]o qualify as a trade secret, the information that the plaintiff seeks to protect must derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy." *Id.* Also, "if the information in question is generally known or readily accessible to third parties, it cannot qualify for trade secret protection." *Id.*

"Customer lists and related information may constitute protectable trade secrets under Florida law." *Exchange Intern., Inc. v. Vacation Ownership Relief, LLC*, No. 6:10-cv-1273-Orl-35DAB, 2010 WL 4983669, at *5 (M.D. Fla. Oct. 27, 2010). Here, the Court agrees that Plaintiffs have demonstrated that there is a substantial likelihood that Defendants had access to specific confidential client information, including their purchasing patterns and expected needs,

-16-

and that they used this information to solicit clients for TSW and TDC.[12] (D.E. No. 4, Exhs. G, K, & M); (D.E. No. 131-1, Sworn Statement of Walters at 7-13, 28-29, 31-33); (D.E. No. 153-2, Sworn Statement of Kent at 27-30, 37-39, 60-61, 66-67, 100-101, 140-141, 146-147, 154). Accordingly, there is also a substantial likelihood of success as to Plaintiffs' claims under Florida's Uniform Trade Secrets Act.

### 3.    Violation of the Computer Fraud and Abuse Act

Plaintiffs have also demonstrated that they have a substantial likelihood of success as to their claim of a violation of the Computer Fraud and Abuse Act. To prove a violation of the Computer Fraud and Abuse Act Plaintiffs must demonstrate that Defendants (1) intentionally accessed a computer, (2) lacked authorization or exceeded their authorized access to the computer, (3) obtained information from the computer, and (4) caused a loss of at least $5,000. *Exchange Intern., Inc. v. Vacation Ownership Relief*, 2010 WL 4983669, at * 5. Plaintiffs have submitted evidence that all Defendants, excepting Karen Clemson, either used computers owned by Plaintiffs or directed their use in the Ft. Lauderdale office, to conduct the international or interstate business of TSW, and TDC, causing substantial damages to Plaintiffs. (D.E. No. 39-7 at 1-6); (D.E. No. 153-2, Sworn Statement of Kent at 34-35, 42, 62-63, 116, 127-128). Accordingly, the Court also finds a substantial likelihood of success as to this claim.

### 4.    Tortious Interference with Business Relationships

Finally, Plaintiffs have also demonstrated a substantial likelihood of success on the merits as to its claim for tortious interference with business relationships. "To recover for tortious

---

[12]It is not clear from this record what other trade secrets Defendants may have misappropriated.

interference, . . . [Plaintiffs] must prove: (1) the existence of a business relationship under which

. . . [Plaintiffs have] legal rights; (2) knowledge by . . . [Defendants] of such relationship; (3) an

intentional and unjustified interference with such relationship by . . . [Defendants]; and (4)

damage to . . . [Plaintiffs] as a result of the breach of the relationship." *Babbit Elecs., Inc. v.*

*Dynascan Corp.*, 38 F. 3d 1161, 1177 (11th Cir. 1994). Plaintiffs have demonstrated that

Defendants actively interfered with Plaintiffs' business relationships by marketing their new

businesses, TSW and TDC, to Plaintiffs' existing customers and at times, providing identical

services to identical customers formerly serviced by Plaintiffs. (D.E. No. 4-1, Exh. K); (D.E. No.

153-2, Sworn Statement of Kent at 27-30, 37-39, 60-61, 66-67, 100-101, 140-141, 146-147,

154).

In addition, there is evidence that Defendant Glyn Clemson directed Koek to prepare a

flowchart to mislead one of Plaintiffs' customers, Termoguayas, to falsely show that that TSW,

TDC, and Plaintiffs were all affiliated and that Koek prepared such a flow chart, which former

Defendant Kent sent out. (D.E. No. 153-2, Sworn Statement of Kent at 141-142). Former

Defendant Walters also states that Defendant TDC was formed to service a major customer of

Plaintiffs in Ecuador. (D.E. No. 131-1, Sworn Statement of Walters at 7). Specifically, the

customer was Termoguayas. *Id.* at 9. He states that TDC was going to gain this customer's

business "by pretending we were closely associated with Marine Turbo." *Id.* at 7. Walters states

that this was Glyn Clemson's idea and Koek and Walters went to Ecuador and met with

Termoguays and misrepresented the affiliation. *Id.* at 8-9. TDC was then officially established

with funds paid by Termoguays on a Marine Turbo Engineering invoice but then diverted to

another account used by TDC. *Id.* at 11. Accordingly, there is also a substantial likelihood of

success as to this claim.

## B. Irreparable Harm

Plaintiffs have also satisfied the second requirement for obtaining an injunction. "The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." Fla. Stat. § 542.335(1)(j).[13] Plaintiffs have also demonstrated irreparable harm with regard to their claims for a violation of Florida's Uniform Trade Secrets Act, the Computer Fraud and Abuse Act, and their claim for tortious interference with business relationships. "To demonstrate irreparable harm, a plaintiff must show that it has no adequate remedy at law, meaning that its injury cannot be undone through monetary remedies." *Morris Commun. Corp. v. PGA Tour, Inc.*, 117 F. Supp. 2d 1322, 1330 (M.D.Fla.2000) (internal quotation marks omitted). The crux of each of these claims is that Defendants used Plaintiffs' confidential information to steal Plaintiffs' customers. This is clearly an injury, which is not easily quantifiable in monetary terms. "[T]he loss of customers and goodwill is an irreparable injury." *Ferrero v. Associated Materials Inc.*, 923 F. 2d 1441,1449 (11th Cir. 1991) (internal quotations omitted). Accordingly, Plaintiffs have demonstrated irreparable harm.

## C. Balance of Equities

The Court also finds that the injury to Plaintiffs outweighs whatever damage an injunction may cause Defendants. The Court will, however, require a bond in order to protect

---

[13]Da Motta argues that Plaintiffs cannot demonstrate irreparable harm as to him because Da Motta is no longer employed in the turbo charging industry, nor does he intend to obtain employment within that industry. The Court, however, finds that an injunction is warranted for all the reasons discussed above and that entering an injunction is more appropriate than simply taking Da Motta at his word that he will not harm Plaintiffs in the future.

Defendants' interests in the event that Defendants succeed on the merits.

## D. Public Interest

Here, there is no evidence that a preliminary injunction would be adverse to the public interest. It would be in the public interest to enter a preliminary injunction in this action as the Court has found a substantial likelihood of success on the merits of several claims and it is in the public's interest to uphold the law. *See also* Fla. Stat. § 542.335(k) ("No court may refuse enforcement of an otherwise enforceable restrictive covenant on the ground that the contract violates public policy unless such public policy is articulated specifically by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint.). Thus, the Court finds that the entry of a preliminary injunction is warranted as set forth below. Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that

1. Plaintiffs' Verified Emergency Motion for Preliminary Injunction (D.E. No. 4) is **GRANTED in part and DENIED in part.**[14] **The motion is GRANTED** as follows.

---

[14]The motion for preliminary injunction is granted as to Defendants TSW, Glyn Clemson, and Da Motta. It is denied as to the other Defendants that remain in this action. As discussed above, the Court does not find a substantial likelihood of success as to the claims against Karen Clemson, and this injunction is not entered against her. In addition, at this time, it has not been established that Defendants Koek and TDC have received notice of the pending motion for a preliminary injunction. Accordingly, the motion is denied as to these two Defendants. The Court acknowledges that there is a motion pending regarding service on TDC; however, this motion is not fully briefed. *See* (D.E. No. 202). If appropriate, Plaintiffs may refile a motion for a preliminary injunction against either Koek or TDC. In addition, whether the Court specifically enters the injunction as to Koek and TDC or not, pursuant to Federal Rule of Civil Procedure 65(d)(2), an injunction binds any person with notice of the injunction who is in active concert or participation with a party or a party's officers or agents.

The Court also acknowledges that in its proposed order Plaintiffs requested an extremely

2.     Defendants Glyn Clemson, Da Motta, and TSW whether acting directly or

through any corporation, limited liability company, subsidiary, division, or other device, are

hereby enjoined until June 7, 2012[15] in the geographic area of North and South America as well

as the Caribbean Basin; from:

a.     Advertising, marketing, promoting, offering for sale, or selling any

products or services Plaintiffs also advertise, market, promote or offer for sale[16] and

b.     Receiving any remuneration of any kind whatsoever from, holding any

ownership interest, share or stock in, or serving as an employee, officer, director, trustee, general

manager of, or consultant or advisor to, any business entity engaged in or assisting in the

advertising, marketing, promoting, offering for sale, or sale of any product or service of a similar

---

broad asset freeze as part of the injunction. Plaintiffs, however, did not request the asset freeze
in their motion for preliminary injunction and did not brief this issue. At this time, the Court
does not find the requested asset freeze appropriate.
    Finally, in Plaintiffs' proposed order they requested expedited discovery. The Court,
however, finds this is unnecessary. The Court shall enter a separate order requiring the parties to
conduct their scheduling conference pursuant to Rule 26 of the Federal Rules of Civil Procedure.
The parties may then conduct discovery.

[15]The Court finds an eighteen month period is reasonable under the circumstances and
calculates this date as 18 months from Glyn Clemson's termination on December 7, 2010. The
Court also finds it appropriate to bind TSW and Da Motta to the covenant not to compete as the
record demonstrates that these other Defendants are identified in interest with Glyn Clemson and
have been operating closely with him. *See Dad's Properties, Inc. v. Lucas*, 545 So. 2d 926, 928-
29 (Fla. 2d DCA 1989) (stating "[h]ere it is clear that Mrs. Lucas and her controlled corporation
aided and abetted Mr. Lucas and Al Lucas Enterprises, Inc. in their intentional violation of the
covenant. Because of their close relationship to the covenantors, Susan Lucas, and Martus, Inc.
may be enjoined . . . .").

[16]The Court finds in the context of Plaintiffs' business that the scope of this geographic
restriction is reasonable given that Plaintiffs were operating in this area until Defendants
interfered with their customers. *See Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, at 1307
(S.D. Fla. 2004) (finding a geographic restriction that prohibited a defendant from working in any
geographic space in which the plaintiff operated was reasonable).

nature as those offered and sold by Plaintiffs.

2.     Defendants TSW, Glyn Clemson, and Da Motta and their representatives are enjoined from possessing, retaining, accepting or seeking to possess, retain or accept any assets or business materials belonging to Plaintiffs, such as: equipment, whether office equipment or industrial in nature; tools; business records; computer files; business cards; advertisements; promotional materials; and any other asset or business material that these Defendants ever acquired legally or illegally that belongs to Plaintiffs.

3.     Defendants TSW, Glyn Clemson, and Da Motta and their representatives are hereby enjoined from:

a.     Using, attempting to use, profit from, publish or share any of Plaintiffs' Confidential Information as that term is defined on page 2 of the subject employment agreement until June 7, 2012;

b.     Using, attempting to use, profit from, publish or share any of Plaintiffs' trade secrets, such as confidential client information including their purchasing patterns and expected needs, as defined under Florida's Uniform Trade Secrets Act.

4.     Defendants TSW, Glyn Clemson, and Da Motta and their representatives are hereby enjoined from contacting, attempting to contact, or failing to terminate contact with Plaintiffs' customers and prospective customers in North and South America and the Caribbean Basin until June 7, 2012.

5.     Defendants TSW, Glyn Clemson, and Da Motta and their representatives are hereby enjoined from representing themselves as being employed by working on behalf of, or in any manner being affiliated with Plaintiffs.

6. Defendants TSW, Glyn Clemson, and Da Motta are hereby restrained and enjoined from:

a. Destroying, erasing, mutilating, concealing, altering, transferring or otherwise disposing of, in any manner, directly or indirectly, any documents that relate to the business, business practices, assets or business or personal finances of any Corporate Defendant, or Individual Defendant as such activities relate to the turbocharger service business, and

b. Failing to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of money.

7. Within fifteen (15) business days following the service of this Order, Defendants TSW, Glyn Clemson, and Da Motta, to the extent that it or he has not already done so:

a. Provide the Plaintiffs with a full accounting of all funds, documents, and assets outside the United States which are: (1) titled in the name, individually or jointly, of any Corporate Defendant or Individual Defendant; or (2) held by any person or entity for the benefit of any Corporate Defendant or Individual Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Corporate Defendant or Individual Defendant.

8. Defendants TSW, Glyn Clemson, and Da Motta shall immediately provide a copy of this Order to each of their affiliates, subsidiaries, divisions, sales entities, successors, assigns, officers, directors, employees, independent contractors, client companies, agents, attorneys, spouses and representatives, including Koek and TDC, and shall, within fifteen (15) business days from the date of the entry of this Order, provide the Plaintiffs with a sworn statement that:

a.    confirms that Defendants TSW, Glyn Clemson, and Da Motta have provided copies of the Order as required by this paragraph; and

b.    lists the names and addresses of each entity or person to whom Defendants provided a copy of the Order.  Furthermore, Defendants TSW, Glyn Clemson, and Da Motta shall not take any action that would encourage officers, agents, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with said Defendants to disregard this Order or believe that they are not bound by its provisions.

9.    Plaintiffs shall post a $100,000 bond on or before January 10, 2012.[17]

DONE AND ORDERED in Chambers at Miami, Florida, this _6_ day of January, 2012.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge McAliley
All Counsel of Record
All pro se parties

Ivar Koek
152 Shadowbrook Lane
LaPlace, LA 70005

Ivar Koek
1540 Chickasaw Ave., Apt. 304
Metairie, LA 70005

---

[17]Given the holidays, the Court has given Plaintiffs a large amount of time to post the bond.  The injunction, however, is not effective until the bond is posted.  This deadline has also been extended in this amended order on Plaintiffs' motion.

-24-